UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AARON SINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00870-JRO-MKK |
| | ) | |
| INDIANAPOLIS METROPOLITAN POLICE | ) | |
| DEPARTMENT (IMPD), | ) | |
| E-125 – YOUMANS, IMPD Officer, | ) | |
| E124 – SHAFFER, IMPD Officer, | ) | |
| E190 – MARTIN, IMPD Officer, | ) | |
| E290 – ROBERTSON-COLLINS, IMPD | ) | |
| Officer, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION TO DISMISS IN PART
AND DISMISSING ACTION WITH PREJUDICE**

Plaintiff Aaron Singer sued the Indianapolis Metropolitan Police Department ("IMPD") and four of its officers in their official capacities, alleging violations of his constitutional rights during several interactions he had with law enforcement in 2025. Dkt. 21. As relief he seeks only damages. Defendants moved to dismiss the amended complaint. Dkt. [22]. For the reasons below, that motion is **GRANTED in part** because IMPD is not a proper party and because the City of Indianapolis—the real entity sued in a claim against IMPD officers in their official capacities—is not subject to federal RICO liability.

This Order also addresses Defendants' motion to show cause, dkt. 47, and Singer's cross-motion for sanctions, dkt. 51. While discovery was pending, Singer sent hundreds of threatening and harassing emails to Defendants' counsel, some of which threatened sexual violence against counsel. At a

telephonic status conference on February 26, 2026, the Magistrate Judge assigned to this case admonished the parties and directed them to "limit all communications with each other to matters that are solely within the scope of the claims currently before the Court." Dkt. 45 at 2. In her post-conference minute order, the Magistrate Judge warned, "If a party to a claim engages in unprofessional, disrespectful conduct towards others involved in the litigation, the Court may dismiss the claim with prejudice." *Id.* Singer did not heed this warning.

Defendants' motion demonstrates that Singer continued to send inappropriate, threatening, and harassing emails to counsel despite the February 26 order to refrain from this conduct. Accordingly, the Court finds that Singer abused the judicial process in bad faith and willfully violated the Magistrate Judge's February 26 order by continuing to send inappropriate, threatening, and harassing communications to opposing counsel. The Court **GRANTS** Defendants' motion for cause, dkt. [47], **DENIES** Singer's cross-motion for sanctions, dkt. [51], and as a sanction against Singer **DISMISSES** what remains of his claims **with prejudice.** The remainder of the motion to dismiss, dkt. [22], is **DENIED AS MOOT.**

## I.  BACKGROUND

In evaluating motions to dismiss under Rules 12(b)(1) and 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002); *Thompson v. Ill. Dep't of Prof'l Reg.*, 300

2

F.3d 750, 753 (7th Cir. 2002). The Court does not, however, credit legal conclusions. *Thompson*, 300 F.3d at 754.

### A.    Singer's Claims

Singer alleges that IMPD and its officers violated his First, Fourth, and Fourteenth Amendment rights during several interactions in early 2025.

The first interaction took place on January 22, 2025. Singer was homeless at the time. Before getting off an IndyGo bus at the Carson Transit Center in downtown Indianapolis, Singer asked the driver to radio ahead to inform IndyGo personnel that he wanted to speak with a manager. Upon arrival, he encountered uniformed IndyGo security personnel who he claims unlawfully detained him and searched his pockets without his consent. IndyGo security was later joined by IMPD officers, who searched his backpack without his consent. No one informed him of the grounds for his arrest. When an IndyGo manager arrived, she spoke only to the officers and not to Singer. IMPD officers then transported Singer to the Marion County Jail, "subjected [him] to a warrantless and nonconsensual blood draw and fingerprinting," strip-searched him, placed him on suicide watch, denied him a phone call, and "held [him] in a brightly lit room overnight alongside other fully naked detainees." Dkt. 21 at 8. Singer was released the next day without charges.

The second incident took place on February 25, 2025. After speaking with a woman who identified herself as having recently experienced police misconduct, Singer approached three IMPD officers standing on the street corner nearby and "asked whether they upheld the Constitution in their interactions

3

with the public." Dkt. 21 at 10. He described his own experiences on January 22. "The officers then appeared uneasy, and shortly thereafter dispersed from the area without further discussion." *Id.* Later that afternoon, Singer visited the College Avenue Branch of the Indianapolis Public Library. After he departed, his former roommate was "confronted in the library restroom area by IMPD officers" who questioned her. *Id.* IMPD officers then followed her to her residence, where they encountered Singer. The officers claimed they had received a report from the roommate that she felt unsafe around him. The roommate later told Singer she had not made any such report. Singer and his roommate both reported being disturbed by the encounter with police. *Id.* at 12. When Singer visited IMPD headquarters on March 8 to lodge a complaint about the February 25 incident, officers refused to clarify the justification for their behavior and spoke to Singer "in a demeaning manner." *Id.* at 13. Singer understands these interactions to "reflect[] a deliberate and coordinated pattern of harassment and intimidation directed at [him] in retaliation for his protected speech and his efforts to seek redress for prior constitutional violations" and "an institutional policy, custom, or tolerance of retaliatory behavior toward complainants of police abuse." *Id.*

The third incident took place on March 9, 2025. Singer visited the Irsay Family YMCA at CityWay in downtown Indianapolis, where he was a member, and requested access to the chapel. The YMCA staff "responded in an erratic and illogical manner, ultimately threatening to ban [Singer] from the premises." Dkt. 21 at 14. The staff then contacted IMPD officers, who "declined to hear

4

[Singer's] side of the story," "spoke exclusively with YMCA personnel," and "summarily escorted [Singer] out of the building under threat of force." *Id.*

The fourth incident took place on June 22, 2025. Singer was physically assaulted while riding an IndyGo bus in Indianapolis. He got off the bus at 42nd Street and College Avenue and walked to a nearby Indianapolis Fire Department station to seek medical assistance. The firefighters "failed to provide medical aid," "refused to summon an ambulance," and "did not contact law enforcement for assistance," mocking and dismissing Singer instead. Dkt. 21 at 16. When Singer was walking near the same fire station later that day on the way to a convenience store, an IMPD patrol vehicle forced him into the station's parking lot. When he "informed the officers that he was currently pursuing federal civil lawsuits against IndyGo, IMPD, and the Marion County Sheriff's Office," the officers brought him to the ground, handcuffed him, and transported him to the Marion County Jail. Singer remained incarcerated for four days. He later left the state on court permission "for his safety," and charges were eventually dismissed. Dkt. 21 at 18.

Singer alleges that he is "a law-abiding adult" with "no criminal record" and "has had no substantive interactions with the Indianapolis Metropolitan Police Department prior to the incidents described herein." Dkt. 21 at 19. He filed this lawsuit in May 2025. His amended complaint, filed on October 27, 2025, brings claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for violations of his constitutional rights under the First, Fourth, and Fourteenth Amendments, and a claim under 18 U.S.C.

5

§ 1962(c) for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He also brings a variety of state-law claims. He names as Defendants IMPD and four IMPD officers in their official capacities. *See* dkt. 21 at 53 (alleging that individual officers acted "in their official capacities as officers of [IMPD]" and "under color of law" "[a]t all relevant times"). Defendants moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 22.

**B.    Cross-Motions for Sanctions**

During this litigation, Singer "has made a pattern of incoherent and voluminous communication to Defendants' counsel, by phone and email, with the vast majority of those emails having nothing to do with substantive litigation matters." Dkt. 41 at 1. Many of the over 300 emails Singer sent to Defendants' counsel since the case began are intimidating and threatening in nature, including damnatory imprecations and personal threats of rape and violence. *Id.* at 2; *see, e.g.,* dkt. 41-1 at 1 ("I will eat your soul"); dkt. 41-2 at 2 ("[I]f you do anything un-toward or un-lawyerly to me I WILL destroy not only your job, but your entire capacity to generate income in this realm of labor (law)."). Some of the emails include incongruous personal musings:

> I'm drinking today. It just kinda happened. If the universe tells me to have a drink, I will. Although I assume you think I'm drunk for my emails. I usually am drunk when I speak to you, my highly paid therapists. HIGHLY paid. You guys get paid WAY more on a word by word level than the therapist I had 8 years ago.

6

Dkt. 41-2 at 1.  Singer "has also called counsel's office, cursing at and berating support staff."  Dkt. 41 at 1.

These unwelcome and threatening communications escalated to threats of sexual violence in early February 2026.  On the evening of February 3 and early morning of February 4, Singer threatened to rape Defendants' counsel in multiple emails.  Dkt. 41-3 at 1 ("I WILL rape that ass"); *id.* ("Don't Worry Bitch Lawyers. I will rape your asses in line with my obligation. I will rape you. If only to teach you about rape. Frankly.").  This prompted counsel to request a discovery conference with Magistrate Judge M. Kendra Klump, which was granted on February 6, 2026.  *See* dkt. 39.  The Magistrate Judge set the conference for February 26.  *Id.*  In the meantime, Singer continued to harass counsel by email, including threatening to rape their corpses.  Dkt. 41-4 ("I will rape your lifeless corpse"); dkt. 41-5 at 2 ("Generally when I curse people to Tartarus[1] I say 'I will see you, but you won't see me.' But in the USA system…. you will see me. You will see me in full. Resolute acceptance of death[.]") (ellipsis in original); *id.* at 7 ("I want to RAPE your cadaver"); dkt. 41-6 at 1 ("I'm on a FEDERAL boat bitch. Eat my feces, phage. pronounced FAG."); dkt. 41-7 at 1 ("If you need elucidation, these lawyers are SCUM. [M]eant for Tartarus. Enjoy your afterlife assholes."); *id.* at 2 ("I just want to rape you lawyer whores' cadavers.").

---

[1] The Court takes judicial notice that Tartarus, in ancient mythology, is "a section of Hades reserved for punishment of the wicked."  *Tartarus*, Merriam-Webster's Collegiate Dictionary, https://www.merriam-webster.com/dictionary/Tartarus (last visited July 31, 2026).

Defendants' counsel reported these threats to IMPD. Dkt. 41 at 2. On February 18, 2026, the Marion County Prosecutor's Office charged Singer with felony stalking and intimidation and misdemeanor harassment. Dkt. 41-8. The Marion Superior Court made a finding of probable cause, issued a warrant for Singer's arrest (which is still active), and entered a no contact order. *State v. Singer*, No. 49D17-2602-F6-004865 (Marion Super. Ct. Feb. 18, 2026); *see* dkt. 55 at 2 n.1, 3 n.4.

At the Magistrate Judge's direction, the parties submitted dispute memoranda in advance of the status conference scheduled for February 26. Dkt. 39; *see* dkts. 41, 43. Defendants' counsel maintained that "Singer's deluge of threats has effectively disrupted this case from proceeding" despite counsel's "best [efforts] to ignore the harassing and frivolous communications." Dkt. 41 at 3. They included copies of some of the emails they had received. They asked the Court to "order that Plaintiff cease any and all communications which are not substantively related to the case." *Id.* Singer responded that Defendants had failed to comply with discovery and unlawfully disseminated his sensitive information to third parties as part of a criminal history report, and asked the Court to compel complete discovery responses. Dkt. 43 at 2–4. He did not acknowledge his communication patterns in his response.

At the February 26 status conference, Judge Klump "advised both Parties that the use of threatening, abusive, or harassing language in any form of communication with the opposing party, their counsel, or others involved in the disposition of Plaintiff's claims is unacceptable and will not be tolerated by the

8

Court."  Dkt. 45 at 1.  "The Parties were advised to limit all communications with each other to matters that are solely within the scope of the claims currently before the Court."  *Id.* at 1–2.  Judge Klump warned that "[i]f a party to a claim engages in unprofessional, disrespectful conduct towards others involved in the litigation, the Court may dismiss the claim with prejudice."  *Id.* at 2 (citation omitted).  Singer understood the significance of the admonition and emailed Defendants' counsel after the conference to "apologize for any of my actions that might have disturbed you in any way."  Dkt. 47-1.

Unfortunately, on March 2—four days after the status conference—Singer again emailed Defendants' counsel, stating: "Apparently I am no longer able to speak to lawyers... because of a Court order, I am unable to speak to lawyers. I'm pretty tipsy, but the reality is: IT'S OVER BITCH."  Dkt. 47-2 (ellipsis in original).  He continued, "Magistrate Judge beats, hoors [sic]/spies for foreign nations.  So, you have been sold."  *Id.*  The Court construes this comment to imply that Judge Klump is a foreign agent who misled the attorneys.  *See also* dkt. 41-5 at 3 ("judges are underworld creatures like me").  Singer closed the email, "Resolute acceptance of death."  Dkt. 47-2; *cf.* dkt. 41-5 at 2.

On March 16, Singer sent counsel another email with the subject line "Wolf is in the gates," stating:

> You and the mayor and city council should be saying:
> "The wolf is inside the gates."
> Wolf gonna wolf ;)

9

Dkt. 47-3.  And on March 25—shortly after an email in which he promised that "your physical and emotional safety will be my first priority" and insisted that this was "not sarcasm," dkt. 47-4—he sent the following:

> I hope you are feeling safe.  Your safety is my primary concern.  I could never do what you guys did.  Lie to the police.  Express yourselves so effeminately and shamefully in front of multiple Courts...  Some would condemn your actions as the flailing actions of morons, but I think you are BRAVE.  I couldn't do it.  Lie to the Police.  Fabricate a false reality because of petty emotion.  You people are BRAVE.
>
> Tartarus awaits[.]

Dkt. 47-5 (ellipsis in original); *cf., e.g.*, dkt. 41-5 at 2, dkt. 41-7 at 1.

Defendants filed a motion to show cause alerting the Court that Singer was "continuing to send inappropriate, wasteful, and harassing correspondence," dkt. 47 at 1, providing copies of the above emails and other examples, dkts. 47-1 through 47-6; *see also* dkt. 48-1.  Singer responded to Defendants' motion to show cause by filing his own cross-motion for sanctions, alleging that Defendants' motion was "frivolous within the meaning of Federal Rule of Civil Procedure 11."  Dkt. 51 at 1.  He did not deny sending the emails. He rather argued that Defendants "failed to identify any direct order issued to Plaintiff that Plaintiff allegedly violated.  Plaintiff is not in violation of any Court order."  *Id.*  He also argued that the motion "contains ad hominem attacks" and "unsupported accusations," asserting that Defendants "resort[ed] to character assassination—calling Plaintiff 'drunk,' accusing him of threats, and attaching criminal charges filed in another jurisdiction as exhibits to a civil discovery motion."  *Id.* at 1–2.  He further asserted that he "has never been convicted of

10

any crime of violence" and that "[t]he suggestion that Plaintiff poses a threat to counsel is contradicted by the entire record."  *Id.* at 2.

Singer moved for monetary sanctions under Rule 11.  Dkt. 51 at 3.  He attached an invoice purporting to enumerate his hourly expenses incurred in responding to Defendants' motion to show cause, calculated at the "baseline public-interest attorney wage" (for himself proceeding *pro se*).  Dkt. 51-2 at 2–3. Defendants replied that Singer's assertions "are without merit," pointing to Judge Klump's minute entry for the February 26 status conference expressly ordering Singer to refrain from further abusive communication with counsel. Dkt. 55 at 2.  Defendants also noted that Singer's emails violated the Marion Superior Court's no-contact order.  *Id.* at 3 n.4.

## II.  LEGAL STANDARDS

### A.    Motion to Dismiss

The purpose of a motion to dismiss under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Rule 12(b)(1) requires dismissal of claims not within the subject-matter jurisdiction of the Court.  Jurisdiction is the "power to decide," *Boley v. Colvin*, 761 F.3d 803, 805 (7th Cir. 2014), and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary.  *In re Chi., R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). When considering a motion to dismiss under Rule 12(b)(1), the district court

11

"may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

Rule 12(b)(6) permits dismissal only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Killingsworth*, 507 F.3d at 618–19.

### B.    Dismissal Sanction

"A district court has inherent authority to sanction conduct that abuses the judicial process." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)); *see White v. Williams*, 423 F. App'x 645, 646–47 (7th Cir. 2011); *Thompson v. Holmes*, 738 F. Supp. 318, 321 (N.D. Ind. 1990) (citing Court's "inherent power to manage its own affairs so as to achieve the orderly disposition of cases"). "Dismissal may be appropriate when a party has shown a lack of respect for the court or proceedings." *White*, 423 F. App'x at 647 (citing *Petito v. Brewster*, 562 F.3d 761, 762–63 (5th Cir. 2009), and *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d

12

836, 841 (10th Cir. 2005)); *see Bakhtiari v. Kahn*, 2026 WL 1239288, at \*2–3 (7th Cir. May 6, 2026) (describing inherent authority to sanction bad-faith conduct).   Dismissal is ultimately a matter for the Court's discretion.   *See Montano*, 535 F.3d at 563.

### III.  DISCUSSION

Singer brings two federal claims against IMPD and four officers in their official capacities: (1) violations of the First Amendment, Fourth Amendment, and Fourteenth Amendment under 42 U.S.C. § 1983, including a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (2) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  He also brings state-law claims.  As discussed below, Singer's claims against IMPD must be dismissed, so Defendants' motion to dismiss is granted in part.  The remainder is denied as moot, as the Court dismisses Singer's entire amended complaint with prejudice as an independent sanction for his inappropriate, threatening, and harassing communications to Defendants' counsel throughout this litigation and his willful disobedience of the Magistrate Judge's order to refrain from further abuse.

### A.      Singer's lawsuit is properly against the City of Indianapolis.

First, as Defendants observe, IMPD is not a suable entity under Indiana law, and all claims against it must be dismissed.  Whether a local government entity is amenable to suit under § 1983 is a matter of state law.  *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997)).  The Seventh Circuit has recognized that "the Indiana

statutory scheme does not grant municipal police departments the capacity to sue or be sued." *Sow*, 636 F.3d at 300. Like other municipal executive departments, local police departments in Indiana function as agencies of the municipality itself and not as independently suable entities. *Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3 (N.D. Ind. Nov. 23, 2010); *see* Ind. Code §§ 36-1-2-10, 36-1-2-11, 36-1-2-23. Consistent with this precedent, this Court has repeatedly recognized that IMPD is not a suable entity, and therefore claims against IMPD are properly asserted against the City of Indianapolis. *See Wynn v. City of Indianapolis*, 496 F. Supp. 3d 1224, 1232–33 (S.D. Ind. 2020); *Ware v. City of Indianapolis*, 2021 WL 4895320, at *2–3 (S.D. Ind. Oct. 20, 2021); *Shirley v. IMPD SWAT*, 2020 WL 6049839, at *2 (S.D. Ind. June 8, 2020), *report and recommendation adopted*, 2020 WL 4187822 (S.D. Ind. July 21, 2020). All claims against IMPD are accordingly **DISMISSED** because it is not a proper defendant.

Second, because Singer sues the four IMPD officers in their official capacities, those claims are in all respects other than name against the City of Indianapolis, and should be interpreted as such. *Carlyle v. Fogarty*, No. 1:11-cv-1151-JMS-DKL, 2013 WL 633104, at *2 (S.D. Ind. Feb. 20, 2013) (citing *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir.1992)). The City of Indianapolis is not subject to RICO liability, so that claim is **DISMISSED.** *F & J Apartments, LLC v. Hall*, No. 4:18-cv-00010-SEB-DML, 2019 WL 1227696, at *2 (S.D. Ind. Mar. 15, 2019). The City of Indianapolis is a proper defendant under § 1983 and *Monell*.

14

Having said that, the Court will not devote any additional judicial resources considering Defendants' motion to dismiss or the underlying merits of Singer's case because the Court now dismisses Singer's amended complaint with prejudice as a sanction.

### B. The Court dismisses this action with prejudice as a sanction for Singer's inappropriate conduct and willful violation of a court order.

The right to maintain a case in federal court "is not without limits." *Petito v. Brewster*, 562 F.3d 761, 763 (5th Cir. 2009) (per curiam). It is this Court's responsibility to "protect judicial officers as well as those appearing in court on their own behalf and on behalf of others." *Id.* Whether his underlying claims have merit or not, Singer has forfeited the right to carry on this case by his inappropriate conduct and willful violation of a court order. *See Harris v. City of Bloomington*, 2026 WL 1255786, at *2 (7th Cir. May 7, 2026) (pro se plaintiff's "abusive litigation strategy gave the court ample grounds to dismiss even despite the policy favoring a decision on the merits").

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *see Dotson v. Bravo*, 321 F.3d 663, 667–68 (7th Cir. 2003). These sanctions "must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776. Threats to other parties or opposing counsel, including behavior

15

demonstrating contempt for the Court's efforts to maintain the integrity of its proceedings, are examples of bad-faith conduct for which sanctions up to and including dismissal are warranted. *See Bakhtiari v. Kahn*, 2026 WL 1239288 (7th Cir. May 6, 2026) (plaintiff threatening counsel's wife and children in intimidating emails to counsel); *Petito*, 562 F.3d at 763 (plaintiff "used vulgar and abusive language to refer to judicial officers" and "sent threatening e-mails to opposing counsel"); *White v. Williams*, 423 F. App'x 645 (7th Cir. 2011) (plaintiff tossing papers in anger and accusing judge of bias during remote court proceeding); *Stearman v. Comm'r of Internal Revenue*, 436 F.3d 533, 537 (5th Cir. 2006) (plaintiff disregarding court orders and accusing judge and opposing counsel of criminal conduct); *Thompson v. Holmes*, 738 F. Supp. 318 (N.D. Ind. 1990) (plaintiff uttering profanities within earshot of jury during defense counsel's closing statement).

The Court finds that Singer's inappropriate, threatening, and harassing communications with Defendants' counsel, as documented in his email messages, constituted an abuse of the judicial process undertaken in bad faith.

The Court also finds that Singer's emails dated March 2, March 16, March 25, and March 30 constitute willful violations of the Magistrate Judge's February 26 order to cease and desist from such language and restrict his communications to those matters relevant to claims currently before the Court. Singer received notice of the Magistrate Judge's warnings to "limit all communications with each other to matters that are solely within the scope of the claims currently before the Court," dkt. 45 at 2, and that "[i]f a party to a

16

claim engages in unprofessional, disrespectful conduct towards others involved in the litigation, the Court may dismiss the claim with prejudice," *id.* Singer knew that his inappropriate emails were disturbing to opposing counsel, and he fully appreciated the significance of the Magistrate Judge's warning to stop sending them. Immediately after the February 26, 2026 status conference, he emailed opposing counsel, stating, "I apologize for any of my actions that might have disturbed you in any way. In the interest of the Court, I extend an olive branch to you, opposing counsel." Dkt. 47-1. Nonetheless, Singer continued to send inappropriate, threatening, and harassing emails that targeted not only opposing counsel but also the Magistrate Judge.

Singer makes several baseless objections in his response. He insists that Defendants bring "ad hominem attacks" and "unsupported accusations" against him, and that they "resort to character assassination" about his intoxication and malicious intent. But Singer's emails speak for themselves, and he does not deny sending them. His claim that "[t]he suggestion that Plaintiff poses a threat to counsel is contradicted by the entire record" is demonstrably false. Singer faces felony charges for his conduct and is presently subject to a no-contact order entered by the Marion Superior Court. *State v. Singer*, No. 49D17-2602-F6-004865 (Marion Super. Ct. Feb. 18, 2026).

Singer also claims that Defendants' motion for cause is timed to disrupt discovery, implying that if counsel found the behavior so objectionable, they should have spoken up sooner. The Court rejects this argument. That counsel waited to bring Singer's verbal harassment to the Court's attention is not

17

evidence of gamesmanship but professional restraint.  Professional lawyers are expected to give grace to self-represented litigants.  And that's what Defendants' counsel did until February 2026, when, as Defendants put it, Singer "escalated his correspondence to threats of violence."  Dkt. 47 at 2; *see also, e.g.,* dkt. 41-5 at 6 ("I want to RAPE your cadaver").

No further process is required before imposing the sanction of dismissal with prejudice.  A pro se plaintiff engaging in such patently frivolous and abusive conduct "need[s] only notice of the district court's intent to impose sanctions sufficient to allow him a meaningful opportunity to respond or defend himself." *Santoyo v. City of Chicago*, 141 F.4th 1328, 1330 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 907 (2025).  The Court warned Singer that his conduct was abusive and sanctionable, and he has had the opportunity to respond.

Singer's response to Defendants' motion to show cause does not convince the Court that a lesser sanction should be imposed.  To the contrary, his temerity in denying his inappropriate conduct—claiming instead that *Defendants* should be sanctioned and seeking attorney's fees for his time spent responding to their motion—confirms the Court's decision.  *Cf. Santoyo*, 141 F.4th at 1330 (pro se plaintiff's similar request for fees was "the final straw that drew the sanctions").  Having "crossed the line yet again," Singer cannot now claim "surprise[] at the ensuing consequences."  *Id.*

The Court therefore **GRANTS** Defendants' motion to show cause, dkt. [47].  As the Magistrate Judge had warned Singer, dkt. 45 at 2, the Court now imposes the sanction of **dismissal with prejudice.**

18

## IV.  CONCLUSION

Defendants' motion to dismiss, dkt. [22], is **GRANTED in part** as to all claims against IMPD and the federal RICO claim against the four IMPD officers. The remainder of the motion to dismiss is **DENIED AS MOOT.** Defendants' motion to show cause, dkt. [47], is **GRANTED,** and Singer's cross-motion for sanctions, dkt. [51], is **DENIED.** All claims against all Defendants are **DISMISSED with prejudice** as a sanction for Singer's abuse of the judicial process undertaken in bad faith and willful violations of the Court's order directing him to cease sending inappropriate, threatening, and harassing communications to opposing counsel.

The Court is aware of Singer's additional lawsuits that are pending in this Court. *Singer v. Indianapolis Metro. Police Dep't, et al.,* No. 1:26-cv-00930-JRO-KMB; *Singer v. Indianapolis Pub. Transit Sys., et al.,* No. 1:25-cv-00470-MPB-MJD. Given the egregious nature of Singer's inappropriate communications in this case, Singer is further warned that if he engages in any conduct similar to what the Court has discussed in this Order in the course of litigating his other claims, including but not limited to sending inappropriate communications to opposing counsel, the Court may, without further notice, dismiss his lawsuits with prejudice and impose any other appropriate sanction.

The Clerk is **directed** to docket this Order in Cause No. 1:26-cv-00930-JRO-KMB and Cause No. 1:25-cv-00470-MPB-MJD.

19

Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 7/31/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

AARON SINGER
2885 Sanford Ave SW
#44354
Grandville, MI 49418

All CM/ECF-registered counsel of record

20